May it please the Court, Ryan Wu for appellants. I'd like to reserve three minutes for rebuttal. Sure. I'll try to help you out, but keep your eye on the clock as well. I will. While this appeal presents a host of issues, I'd like to focus the Court's attention on three specific issues. The decertification of the respite class, the denial of certification of the off-the-clock class, and the summary judgment of the PAGA claims. First, the District Court's order decertifying the respite class is a clear abuse of discretion. Autozone has a written respite policy exactly like the one the California Supreme Court found to be particularly amenable for class treatment. The written policy provides for one 10-minute respite every four hours, when California law provides that a 10-minute break be given for shifts from 3.5 hours to 6 hours, another 10-minute break for shifts from 6 to 10 hours, and another break for shifts between 10 and 14 hours. So employees working shifts of 3.5 to 4 hours, 6 to 8 hours, and 10 to 12 hours, in this case they're called short shift, mid shift, and long shift, did not get an authorized rest break. Not only is there a written policy, plaintiffs submitted evidence that the policy was widely disseminated. And Autozone's own corporate designees testified that the written policy is their actual policy. In decertifying the respite class, the District Court abused its discretion by conflating a merits determination with predominance. The court found that the 2005 to 2008 policy may be lawful because it contained a bare compliance statement without the written respite policy. Even though the 2008 handbook contained the same compliance statement with the unlawful respite policy. But putting that aside and accepting for the sake of argument that Autozone's evidence is accepted on its face, all that results is another competing common policy. So what we have is our argument, which is there's a policy that extends from 2005 to 2012 that is unlawful, and Autozone presenting a common defense saying that from 2005 to 2008 they do have a policy that is lawful. That's what the court originally thought, that there was a uniform in place. But then later the court said, okay, well, now that I've had the benefit of reviewing more evidence, I think that was an error and there was at least sufficient evidence presented to cast doubt on the fact that there was a uniform policy in place during the class period at all. Wasn't that why the court decertified? But that's an error because predominance isn't about uniformity. It's about whether the common questions across the class predominate over individual questions. Sure, sure. Just a minute. Let me finish. Okay. If I can get my question out. Sorry, Judge Rainer. That's definitely part of the analysis, and you're quite correct that the court has to be looking at whether there's predominance. But the court cited evidence that indicated that predominance was going to be problematic, and that was part of the analysis in decertification. Not only was the court's understanding that there was a uniform policy called into question, but also there were over 100 declarations from employees that called into question the predominance analysis as well. So I think you have to address the whole of the evidence that the court relied on in decertifying the case. Okay. I like to split that up. In terms of the declarations that AutoZone presented, in Brinker, which is just directly analogous to this case, the defendant presented hundreds of declarations supporting their argument that meal and rest breaks were taken. The issue isn't whether some people have taken meal and rest breaks or hear rest breaks. Under California law, under Brinker, the legal question is, did the employer authorize and permit a 10-minute rest break? And in Brinker, I mean, I can just read, it says directly, an employer is required to authorize and permit the amount of rest break time called under the wage order for its industry. If it does not, for example, adopts a uniform policy authorizing and permitting only one rest break for employees working a seven-hour shift when two are required, which is exactly the same as here. This is Brinker at 1033, 53 Cal Forth at 1033. It violated the wage order and is liable. No issue of waiver arises for a rest break that was required by law but never authorized. If a break is not authorized, an employee has no opportunity to decline to take it. So here, if they didn't authorize or permit the rest breaks, it's true that perhaps there may be some people who took rest breaks anyway, but that's the legal question is it's the employer's duty to authorize and permit rest breaks. Did the declaration say that the employees took the breaks anyway, or the declarations said that the employees knew they were entitled to take it? The declarations were all over the place, but I think the— Isn't that the problem? Yeah. No, it isn't the problem because I think the question, you know, under Brinker a uniform written policy creates a common question for the class. The common question is whether or not the uniform policy is lawful or unlawful on its face. And if it's unlawful and it's applied class-wide, the liability is established. That's just clear from Brinker in those pages that I've cited. So the individual declarations don't affect whether or not the predominance is, you know, it doesn't affect predominance. In terms of getting back to my point about the lawful policies that, purported lawful policies that AutoZone presented, those are common defenses across the class. They don't create individualized questions. They're saying that they have a common policy between, a common lawful policy from 2005 to 2008. In Dukes, the court said you can have dozens of common questions. That's having a lot of—presenting extra common questions doesn't defeat commonality or predominance. What they've done by presenting a lawful policy is to add a common question. That doesn't—it doesn't create any more individualized issues because you can present this to the jury and say, look, we're, you know, we have a—we're— the plaintiffs allege that there is an unlawful written policy that's been implemented class-wide. AutoZone alleges that there is a lawful policy that's been implemented class-wide from 2005 to 2008 as a defense. What's the answer to those questions? That's eminently suitable for class certification. So by—by delving into the merits—and the district court's order is replete with errors. You know, it's replete with—with findings of—on the merits as to lawfulness and unlawfulness. I mean, the district court kept saying, well, look, if there's a—if this policy is lawful, that creates a problem for the plaintiff for the purposes of decertification. But as the court is well aware, whether the policy is lawful or unlawful is a merits question. It's not a question that is decided at the certification stage or at the decertification stage. So that—that is a clear error. On the second point, which is—which is the store opening class alleging a uniform off-the-clock policy in practice, there's no dispute that the—that AutoZone did not compensate employees for store opening. They did not clock in until they opened the door, turned on the alarms, and in fact AutoZone changed the policy on the off-the-clock for the store opening employees later in the class period into 2011 to add one minute of compensable time. So that's an implicit concession that they have a problem. And in denying—in denying class certification of the off-the-clock policy, the court abuses discretion, given the evidence before it. The court didn't have the benefit of Jimenez v. Allstate, 76—765F301161, which emphasizes that if you have an unlawful practice, even if you have a written policy on its face that doesn't create—that doesn't defeat class certification. So now that there's Jimenez—and the court also didn't have the benefit of Choister v. Starbucks, the California Supreme Court case on the de minimis ruling, and this court's recent case in Rodriguez v. Nike, both of which held that the de minimis defense doesn't apply in—for California wage and hour law. I think this issue should be remanded for further consideration in light of those cases. And finally, on the PAGA claim, the court made two clear errors. It presumed that the PAGA claim must be alleged in some fashion, in some particular pleading style. It does not. The fact that the second amended complaint was pleaded so that the civil penalties were wedged under each cause of action doesn't mean that somehow the PAGA claim loses its representative aspect. This court has said repeatedly that— But they filed as a class action, not as a representative set of claims. And that was a clear choice, was it not? No, PAGA is inherently representative, Judge O'Scallion. When you bring a PAGA claim, you bring a PAGA claim on behalf of the state for civil penalties assessed against other employees. That's what this court said in Sakob. The California Supreme Court in Iskanian and Williams has said this. So the court made a clear error by saying that we had to bring— when class certification is denied. I'd also note that there were PAGA claims for split shift, for business expense reimbursement, other claims in the complaint that just somehow vanished into the ether. You know, because we didn't try to certify these claims because they're representative claims. They're inherently representative. But somehow the court decided that we didn't have any PAGA claims left because they weren't—we didn't move for certification. And, you know, that's a clear violation under Sakob and under the recent Blair case, which affirmed Sakob. I know you wanted to save some time. Yeah, I will do that now. Good morning, Your Honors. May it please the Court. Greg Iskander for AutoZone. I'd like to start just briefly talking about the jurisdiction issue that we raised in our brief with respect to plaintiff's acceptance of a Rule 68 offer and voluntary dismissal of the claims. To the extent that the Court would allow a carve-out, which the parties did agree to, to carve out the class certification denial and appeal of the denial of class certification, the parties did not carve out any other of the Court's rulings. The parties did not carve out the rulings on summary judgment. They did not carve out the denial of the motion to amend the complaint to add a PAGA representative claim. And they did not carve out the settlement of the individual claims. So the fact that plaintiffs settled those claims, received consideration, and voluntarily dismissed those claims, we submit this Court would have no jurisdiction on appeal under Section 1291 to rule on those, and that particularly would affect the PAGA claim, because the PAGA claim was dismissed on summary judgment. So both the fact that plaintiff dismissed that voluntarily means there's no jurisdiction, and of course the fact that he dismissed his individual claims meant that he was no longer an aggrieved party and could no longer have a PAGA claim. And that's as to the summary judgment and those claims. As to the class certification, of course the question would be whether or not even the parties could carve that out. We would submit that under Baker v. Microsoft. That's a different case where the plaintiffs voluntarily dismissed their claims so they could get jurisdiction, and the Court said, well, that's like a sham dismissal. You can't confer jurisdiction that way. But in subsequent cases by this Court, including Bobbitt v. Milberg, Torrent v. Yacult, Martinez v. Flower Foods, this Court has held that when the parties have stipulated to dismissal, there is no longer jurisdiction in the appellate court. With respect to the arguments by counsel as to the decertification of the rest break case, well, actually let me start with the PAGA, going a little backwards. As to the PAGA, to the extent that this Court accepts jurisdiction on that issue, the district court did not presume that it must be pled in a specific way. The district court correctly noted that you file the case, you pled it as a class, which you're free to do, you amended your complaint to add a representative PAGA claim in the first amended complaint, and then for some reason in the second amended complaint you specifically voluntarily dismissed your representative PAGA case. And then we litigated for, or we did discovery for years only as to the certified rest break class, and then eight years after they dismissed their PAGA case, they filed a motion to amend to add a representative PAGA case, and the Court said, exercising its discretion, Judge Breyer said, no, this is eight years later, this is prejudicial to the defendant, he had not conducted discovery on this, he did not allow them to add it. So the fact of the matter is that it wasn't a matter of just how it was pled, but it was also the fact that they did not have a cause of action for PAGA in a representative capacity. And so the judge did not abuse his discretion in denying a leave to amend or dismissing that on summary judgment. With respect to the off-the-clock claims, plaintiff or appellant points out, says that the Court didn't have the benefit of Jimenez v. Allstate or the Troster decision. That would not have made a difference. The Jimenez case v. Allstate was a misclassification case, very distinguishable from the facts here where all employees were treated the same with respect to a specific policy because they were classified as exempt. And with respect to Troster, no part of the Court's decision on the off-the-class case has to do with the de minimis doctrine. Judge Breyer never ruled that the fact that you flip on the switches or turn on the alarms is de minimis, and so therefore I'm denying classification on that. That was never a factor. The fact of the matter was that the only evidence submitted is AutoZone had a checklist saying, yeah, when you get into the store in the morning, turn on the light switch. One, I'm not aware of any authority that says telling an employee to flip a light switch is suddenly compensable work time, nor does even Troster would say that that kind of activity, which is truly seconds, as opposed to in Troster where they actually, after clocking out, had to go to another computer system, had to do some end-of-the-day paperwork after they clocked out, and the evidence there was that it was four to ten minutes. Troster said you can't say that that's de minimis, but they did not eliminate, they said that there is a place in California law for something that truly might de minimis, and I would submit that flipping a light switch would qualify, if it even qualifies as control, suffering or permitting to work. I would submit that asking an employee to turn on the light switch by the door as you walk into a dark store is not suffering and permitting them to work. And same with the alarms. Here the evidence was that, first of all, only the manager can turn off the alarm. He unlocks the door. Two employees show up. Manager walks in. The alarm pads are right by the door. Testimony was it takes two seconds. You punch in the code. Alarm is off. Some of the alarm code is by the register right where they clock in. So all plaintiffs submitted, by the way, no testimony by any class member that they had to go through this process. Rather, what they did was they obtained alarm records. They obtained clock-in records, and they said, well, look, sometimes the alarm is disengaged at 8.04 and the employee clocks in at 8.08. But what Judge Breyer correctly noted was, well, why is that? First of all, the alarm records and time records were not synchronized. Sometimes you saw a clock in before the alarm was turned off because the clocks were not synchronized. And secondly, the question would be why. What did the employee do? After the alarm was turned off, did the employee go get some coffee? Did they take a smoke break? Were they just hanging out in the break room? Why did they not clock in right away? You can't answer that without individualized inquiries. So Judge Breyer did not abuse his discretion in determining that there were not common answers to common issues of proof on the off-the-clock case, and that it would both be unmanageable and the predominance was not met. With respect to the rest break, counsel argues that Judge Breyer conflated the issues when he made a determination on the merits. Well, first of all, Judge Breyer didn't rule that any of the policies were lawful. Counsel at the time, appellants, actually conceded that the policies outside of the 2008 policy was lawful. But what they had represented to the district court was that AutoZone, and this is in their class certification briefing and, in fact, is in their appellate briefing here, that AutoZone had a common written policy that was unlawful on its face, and that's why the case should be certified. The district court accepted that as true and certified the case. And all the district court did on decertification was say, well, all right, that turned out not to be true. There's actually multiple policies here. There's a written policy before 2008. There's a PowerPoint presentation in 2011 that explained that you do get breaks between 3 1⁄2 and 4 and between 6 and 8. There's a subsequent policy in 2012 that basically no one ever argued was facially unlawful. So Judge Breyer said, okay, there's a host of different policies here. And also we can't look just at the face of the policy to the exclusion of other evidence. The evidence was overwhelming that during the entire class period the way AutoZone operated was on a 2-hour rule. Every hundredth, I think 113 class members said, yeah, no, it was explained to us. We have a 2-2-2 rule. Take your first break after 2 hours, take your lunch after 2 hours, you take your next break after 2 hours. So under any circumstances, it's not just that employees, as Your Honor asked, well, is it just that they happened to take their breaks or that they knew they can take their breaks? The testimony was actually that they knew they can take their breaks. They knew they could take their breaks because they were taught that you take a break every 2 hours. And the other important aspect of this that was always lost a little is plaintiffs focused on this one policy for this one period of time that articulated if you work a 4-hour shift, you get one break. If you work an 8-hour shift, you get two breaks. What was ignored was the fact that shifts were scheduled for 4 or 8 hours. No one scheduled, as a part-time you're scheduled for 4 hours, as a full-time you're scheduled for 8. No one was scheduled for a 3-1⁄2-hour shift. No one was scheduled for a 6-hour shift. So the fact of the matter is telling somebody that if you're scheduled for a 4-hour shift, you get one break, and if you're scheduled for 8 hours, you get two breaks, is not unlawful. That's a correct statement of the law. What they're focusing on is, well, it didn't tell anyone that you get a second break if you work 6 to 8 hours. That didn't matter. People got a second break if they worked a 6 to 8 hours because they got a break every 2 hours. So if you're on that 8-hour shift, even if you happen to leave after 7 hours for whatever reason, you took your break at the 6-hour mark. You took your break at the 2-hour mark. You took your lunch at the 4- to 5-hour mark. You took your second break at the 6-hour mark. And so that destroyed the commonality and the predominance. And importantly, the district court's ruling wasn't just on that. It also turned on the second factor of Rule 23b, which is the predominance, 23b-3, which is the manageability. And there the district court said, how are we going to try this? You told me at class certification that there were rest break logs and that there were audit records and that you'd be able to prove this and it was just a matter of damages. Well, it turned out when they came back to decertification that they elected not to use those. Not that they didn't exist, but they elected not to use them. There's a warehouse full of rest break logs, and plaintiffs had access to that. They went and they looked at them and they decided, and this is a declaration filed by plaintiffs' counsel on the de-cert hearing saying, we looked at those and we decided that they weren't useful to us. They weren't useful for our analysis, so we chose not to use it. Instead, we're going to use this expert. And this expert conducted a survey and Judge Breyer excluded the survey because it was unreliable. 3.4% response rate. Out of, I think, 22,000 to 30,000 class members, they tried to reach 10,000. They only spoke to 343. And of those, they asked the questions and they got their responses. Judge Breyer said, well, first of all, that response rate of 3.4% is too low. Duke's held 8% wasn't sufficient as a response rate. You didn't do an adequate pretest. You did a pretest on five people out of over 20,000 class members, and your pretest really wasn't sufficient to determine whether the questions you were asking were understood, which was bore out by the fact that when we took depositions, we asked the same exact questions that were asked in the survey. People had no idea what we were asking. Plaintiff's counsel was arguing or objecting that the questions were vague and ambiguous and speculative and called for legal conclusion. So it turned out that they had no evidence to present their case. They didn't have records. Their survey was inadmissible, and Judge Breyer exercised his discretion correctly to exclude that. And so there was no way to manageably try this case. The last point I would like to make, Your Honors, is that Plaintiff's counsel submitted on Friday to this court a case for consideration, Cole v. CRST, Inc., and it wasn't argued, but I just want to point out that that case is wholly inapplicable. In that case, this court certified to the California Supreme Court whether or not California law requires there to be an informal policy for meal and rest breaks. Is it unlawful to not have a policy? That was never the theory in this case. The whole theory of this case is that there was a written policy applied to everyone, that there were records, and so I'm not sure that that case, however the California Supreme Court answers that case, even if they answer it in the affirmative, would have no bearing on this case. Unless there's any further questions, I'll submit. Thank you very much for your argument. I'd like to begin with appealability of all the interlocutory orders. There is a judgment in this case. That's the first ER, and so all the interlocutory orders arise from that. In fact, in the Yvonne v. Law Offices case from the Ninth Circuit, a Rule 68 offer and a judgment resulting therefrom, you can appeal adverse decisions in the case. So the fact that the PAGA claim was dismissed by summary judgment preceded the Rule 68 offer and it's directly appealable. Also, it doesn't need to be carved out of the Rule 68 offer. We have a judgment here. It's an adverse order that can be appealed. With respect to PAGA standing, defendant concedes that there is no individual PAGA claim. ER 552, in their motion, they understand that PAGA is inherently a representative claim. There is no individual claim. So the notion that an individual settlement would defeat a PAGA action and wipe out the PAGA claim and leave you with no standing makes no sense in light of the fact that there is no individual PAGA claim. To be sure, the California Supreme Court is currently hearing Kim v. Rains, which deals with PAGA standing. And I don't believe that this court should decide the issue because it's an appealable issue. On remand, the district court can decide whether the PAGA claim should be reinstated. And because Kim v. Rains is going to oral argument shortly, we'll have the benefit of the California Supreme Court decision probably if Your Honors were to remand for further consideration on the PAGA issue. And on the pleading, you know, this talk about sort of we amended for representative, for the representative claim or the non-representative claim, the case law is clear. PAGA is representative. When we assert PAGA penalties in the complaint, we've provided the pre-litigation notice to the LWDA. We were authorized as private attorney generals. Under the statute, we can collect civil penalties for violations against other employees. That's it. That's what the action is. So I don't understand this whole notion of class, you know, individual claims, class claims. It's a representative claim. You know, and Judge Breyer maybe, you know, in the – maybe didn't look at SACOB carefully or – but, you know, we have – We've got your argument. We've got it. Okay. All right. You're over time. Thank you very much for your argument. The matter is submitted.
judges: O'scannlain, Siler, Nguyen